ELECTRONICALLY FILED
2016 Dec 27 AM 9:15
CLERK OF THE WYANDOTTE COUNTY DISTRICT COURT
CASE NUMBER: 2016-CV-000971

## IN THE DISTRICT COURT FOR WYANDOTTE COUNTY, KANSAS

| | | |
|---|---|---|
| **CHRISTOPHER BARNES** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **HOLLY SILLS** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **Case No.** |
| **v.** | ) | |
| | ) | **Division** |
| **CAVALRY SPV I LLC** | ) | |
| **SERVE:** | ) | **Chapter     60** |
| **The Corporation Company, Inc.** | ) | |
| **112 SW 7th Street** | ) | |
| **Suite 3C** | ) | |
| **Topeka, Kansas 66603** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **BERMAN & RABIN, P.A.** | ) | |
| **SERVE:** | ) | |
| **Daniel Scott Rabin** | ) | |
| **15280 Metcalf Avenue** | ) | |
| **Overland Park, Kansas 66223** | ) | |
| | ) | |
| **Defendant.** | ) | |

### PLAINTIFFS' PETITION FOR DAMAGES

Plaintiffs Chris Barnes and Holly Sills, through their undersigned attorneys, state and allege as follows:

### INTRODUCTION

1.      This is a case about Defendants' wrongful and illegal garnishments. Plaintiff Christopher Barnes ("Chris") entered into a repayment plan with Defendants in November 2013, and completed that repayment plan—on time and without any missed payments—on February 8, 2016. Over the course of this repayment plan, Chris paid Defendants a total of $5,750.00.

1


EXHIBIT
A

Despite Chris' successful completion of the repayment plan, Defendants continued to seek Orders of Garnishment and Garnished Plaintiffs' bank accounts.

2.      In November 2016, over nine (9) months after Chris successfully completed the repayment plan, **Defendants continued to garnish Chris' bank accounts to the tune of an additional $6,393.40**—some of which was in a joint account he shares with his girlfriend, Holly Sills who is not subject to any garnishment order or legal process that would authorize Defendants' wrongful garnishment against her.

3.      These additional garnishments brought Chris' total payments on an alleged debt of $4,940.82 to approximately $12,143.40.

4.      As a result of Defendants' outrageous and unlawful conduct, Plaintiffs have suffered significant emotional distress.  To add insult to injury, Defendants have only returned a portion of these unauthorized additional garnishments to Plaintiffs

## PARTIES

5.      Plaintiff Christopher Barnes is an individual Kansas resident and consumer.

6.      Plaintiff Holly Sills ("Holly") is an individual Kansas resident and consumer.

7.      Defendant Cavalry SPV I LLC ("Cavalry") is a Delaware Limited Liability Company which can be served by serving its registered agent, The Corporation Company, Inc., at 112 SW 7th Street, Suite 3C, Topeka, Kansas 66603.

8.      Defendant Berman & Rabin, P.A. ("Berman") is a debt collection law firm located in Overland Park, Kansas.  Berman can be served by serving its registered agent, Daniel Scott Rabin, at 15280 Metcalf Avenue, Overland Park, Kansas 66223.

### FACTS COMMON TO ALL COUNTS

9.    In 2013, Chris allegedly defaulted on a credit card account which was, at that time, held by HSBC Bank Nevada N.A.

10.    On September 30, 2013, Cavalry sued Chris in the District Court of Johnson County, Kansas (13LA08885; "the Lawsuit") to collect on that alleged debt.

11.    According to Defendant Cavalry's Petition filed in the Lawsuit, Cavalry is (or was) "the holder of a valid assignment of [Chris'] HSBC Bank Nevada N.A. account."

12.    Cavalry alleged that Chris had defaulted on his HSBC account in the amount of $4,940.82.

### THE REPAYMENT PLAN – FULL AND FINAL PAYMENT

13.    On or about November 13, 2013, Chris spoke with one of Cavalry's attorneys. Upon information and belief, this was an attorney at Berman.

14.    During that conversation, Chris, Cavalry, and Berman agreed that Chris would make 115 weekly payments of $50.00 for a total of $5,750.00, and, upon successful completion of this payment plan, the debt would be extinguished.

15.    Cavalry and/or Berman represented to Chris that they would accept this payment as full and final payment.

16.    Chris intended his payments under this weekly repayment plan to constitute full and final payment.

17.    Cavalry and Berman had actual knowledge that Chris intended for his weekly payments to constitute full and final payment of the debt.

18.    As there was no final judgment at the time of this agreement, the amount of the debt remained subject to dispute.

3

19.     By entering into this repayment agreement, Chris effectively released his right to dispute the amount of the debt.

20.     The November 13, 2013 agreement and repayment plan shall hereinafter be referred to as "the Settlement."

21.     Under the terms of the Settlement, Chris' payments would begin on December 2, 2013.

22.     Upon information and belief, Cavalry/Berman told Chris that he need not appear at the hearing which was scheduled for the following day.  Further, and upon information and belief, Cavalry/Berman represented to Chris that it would appear and inform the Court of the Settlement.

23.     Therefore, Chris and Cavalry/Berman established a Direct Debit payment plan, whereby Chris would make weekly payments of $50.00.

24.     On November 14, 2013, Berman appeared before the Court and received a Default Judgment against in the amount of approximately $6,108.49.[1]

25.     However, and upon information and belief, Berman did <u>not</u> inform the Court of the prior day's Settlement.

26.     Additionally, Chris was not informed of this default judgment until June 2016.

27.     Thereafter, Chris timely made each and every one of his weekly payments to Cavalry/Berman via Direct Debit, pursuant to the Settlement.

28.     Cavalry and/or Berman made its last Direct Debit on February 8, 2016.

---

[1] Chris does not presently contest this Default Judgment but expressly reserves his right to do so. Upon information and belief, and *inter alia*, there was not sufficient service of process in the Lawsuit.

29.     Shortly before this final payment, in either later January or early February 2016, Chris contacted Berman to inquire as to how many payments remained.  At that time, Berman represented that his final payment would be on February 8, 2016.

**DEFENDANTS' CONTINUED DEBT COLLECTION CONDUCT**

30.     In July, 2016, Cavalry and/or Berman mailed Chris a letter, informing him that he owed an additional approximately $1,100.00 on the debt.

31.     On October 2, 2016, Berman filed a Request for Garnishment in the Lawsuit.

32.     Berman's Request for Garnishment was file stamped by the Clerk of the District Court on October 7, 2016.

33.     Berman's Request for Garnishment sought $1,213.47 to be removed from Chris' bank account(s).

34.     The Court issued an Order of Garnishment in the amount of $1,213.47 on October 7, 2016.

35.     An identical Order of Garnishment was also entered on October 11, 2016.

36.     An Order to Pay In and Pay Out was issued with regards to the October 11, 2016 order on October 28, 2016.

37.     On November 11, 2016, Defendants garnished Chris' individual bank account in the amount of $1,263.47.

38.     On November 16, 2016, Defendants filed another Request for Garnishment in the Lawsuit, this time seeking to garnish $5,079.93.

39.     The Court entered an Order of Garnishment on November 28, 2016.

40.     On November 29, 2016, Defendants garnished two of Chris' accounts:  his individual account, and the joint account that he shares with co-Plaintiff Holly Sills.

41.     Defendants garnished Chris' individual account in the amount of $4,162.18.

42.     Defendant garnished Plaintiffs' joint account in the amount of $967.75.

43.     Prior to the garnishment, Plaintiffs' joint account had approximately $1,048.24.

44.     On December 1, 2016, Chris contacted Berman to inquire about the extra garnishment.

45.     Berman represented to Chris that the extra garnishments were for interest and fees.

46.     Chris continued to press Berman for an answer, and was told that Berman would look into it and call Chris back.  Chris also requested that Berman provide him with a full accounting of his debt, payments, interest, costs and attorneys' fees.

47.     Later that day, Berman emailed Chris and told him that the extra garnishment(s) were in error and the money would be returned.

48.     However, Berman did not provide Chris with the full accounting.

49.     On or about December 1, 2016, Berman returned $967.75 to Plaintiffs' joint account.

50.     On or about December 1, 2016, Berman returned $4,112.18 to Chris' individual account.

51.     Therefore, Berman garnished approximately $5,129.93 from Plaintiffs' accounts on November 29, 2016.

52.     To date, Berman has only returned $5,079.93.

53.     Therefore, Berman has retained approximately $50.00 from the November 29, 2016 garnishments that it stated were in error.

54.     Specifically, Berman represented to Chris the following, on December 1, 2016:

6

"I just fax the release of the garnishment to your bank –you should have access to your funds by later today------with the last pmt that we received $1213.47 should have p/o the bal----once everything is corrected-should become 0 bal---will do the satisfaction of judgment----sorry for the mishap." (all grammar and spelling errors in original).

55.     Chris' payments total $954.98 *more* than Cavalry and/or Berman were awarded in the November 14, 2013 Default Judgment Award.

56.     Chris' payments also total $1,313.47 *more* than the agreed-to amount in the Settlement.

57.     Cavalry/Berman did not enter the satisfaction of judgment until December 9, 2016, approximately ten (10) months after the Settlement repayment plan had ended.

58.     Because Cavalry and Berman accepted a lesser sum as satisfaction of the debt when it agreed to the Settlement on or about November 13, 2013, Chris' debt is and was legally extinguished upon the successful conclusion of that Settlement repayment plan.

59.     Therefore, all sums taken from Chris by Cavalry and/or Berman after February 8, 2016 were and are unlawful and/or unauthorized.

60.     Upon information and belief, Berman's conduct, as described herein, was directed, authorized, and/or ratified by Cavalry.

### EMOTIONAL DISTRESS

61.     After discovering that their bank accounts had been garnished, Plaintiffs began to experience emotional distress.

62.     Chris' emotional distress included, but was not limited to, the following:

    a.  Anger;
    b.  Anxiety;
    c.  Embarrassment;
    d.  Fear;
    e.  Hopelessness;
    f.  Shame; and,
    g.  A negative effect on his relationship with Holly.

7

63.    Holly's emotional distress included, but was not limited to, the following:

a.  Anger;
b.  Anxiety;
c.  Confusion;
d.  Disbelief;
e.  Embarrassment;
f.  Fear;
g.  Hopelessness;
h.  Irritability;
i.  Shame;
j.  Worry; and,
k.  A negative effect on her relationship with Chris.

64.    Additionally, due to the timing of the garnishments, Plaintiffs had to scramble to pay their rent and car payments.

65.    Plaintiffs also experienced increased emotional distress due to the timing—shortly before the holidays, when they were also shopping for friends and family.

66.    Plaintiffs' emotional distress was further exacerbated because they had thought the debt had already been paid off in its entirety.  As it turns out, Plaintiffs were correct in this belief.

## COUNT ONE:
## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
Plaintiff Christopher Barnes Alone
All Defendants

67.    Plaintiff incorporates by reference all facts and allegations contained in the foregoing paragraphs as though fully laid out herein.

68.    The Fair Debt Collection Practices Act ("FDCPA") is intended to "eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e).

69.    Plaintiff is a "consumer," as defined by 15 U.S.C. § 1692a(3).

70.    Each Defendant is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

8

71.     Defendants' violations of the FDCPA include, but are not limited to, the following:

   a.  Engaging in conduct of which has the natural consequence is to harass, oppress, or abuse in violation of 15 U.S.C. § 1692d;

   b.  Falsely representing, in January 2016, that Chris' debt would be eradicated upon the completion of 115 weekly payments of $50, in violation of 15 U.S.C. § 1692e;

   c.  Falsely representing, in July 2016, that Chris owed an additional approximately $1,100.00, in violation of 15 U.S.C. § 1692e, e(2), e(5) and e(10);

   d.  Falsely representing, on October 2, 2016, that Chris owed an additional $1,103.15, in violation of 15 U.S.C. § 1692e, e(2), e(5) and e(10);

   e.  Garnishing Chris' bank account on November 11, 2016 in an amount greater than that authorized by the October 7, 2016 Order of Garnishment, in violation of 15 U.S.C. § 1692f and f(1);

   f.  Falsely representing, on November 16, 2016, the amount Chris owed on the alleged debt, in violation of 15 U.S.C. § 1692e, e(2), e(5) and e(10); and,

   g.  Garnishing Chris' bank account(s) on November 29, 2016, in an amount greater than that authorized by the November 28, 2016 Order of Garnishment, in violation of 15 U.S.C. § 1692f and f(1).

72.     Pursuant to 15 U.S.C. § 1692k(a)(1), Plaintiff is entitled to the recovery of their actual damages, which, in this case, includes his emotional distress.

73.     Pursuant to 15 U.S.C. § 1692k(a)(2), Plaintiff is entitled to the recovery of $1,000.00 in statutory damages.

74.     Pursuant to 15 U.S.C. § 1692k(a)(3), Plaintiff is also entitled to the recovery of their reasonable attorneys' fees.

WHEREFORE, Plaintiff prays for judgment against Defendant(s) in such amount as is allowable by law and to be determined at trial, for their actual damages, statutory damages, pre- and post-judgment interest at the greatest rate allowed by statute, for her reasonable attorneys' fees, and for such other and further relief as may be just and proper under the circumstances.

### COUNT TWO:
### VIOLATIONS OF THE KANSAS CONSUMER PROTECTION ACT
All Plaintiffs
All Defendants

75.     Plaintiff incorporates by reference all facts and allegations contained in the foregoing paragraphs as though fully laid out herein.

76.     The Kansas Consumer Protection Act ("KCPA"), K.S.A. §50-623 et seq., prohibits the use of deceptive and unconscionable acts and practices before, during, or after a consumer transaction in the state of Kansas.

77.     Plaintiffs are each a "consumer" for the purposes of the KCPA.

78.     Defendants are each a "supplier" for the purposes of the KCPA.

79.     The alleged debt was a "consumer transaction" for the purposes of the KCPA.

80.     Additionally, Defendants' attempts to collect on that alleged debt also constituted "consumer transaction(s)" for the purposes of the KCPA

81.     As a direct and proximate result of Defendants' conduct, as alleged herein, Plaintiffs have been damaged and are "aggrieved."

82.     The KCPA should be liberally construed to promote its policies of protecting consumers against suppliers that commit deceptive and unconscionable acts and practices. K.S.A. § 50-623; *Williamson v. Amrani*, 283 Kan. 227, 234 (2007).

83.     Violations of the KCPA can occur before, during, or after the consumer transaction.

84.     Defendants' violations of K.S.A. § 50-626, Deceptive Acts and Practices, include, but are not limited to, the following:

      a.  Willfully using, in any oral or written representation, an exaggeration, falsehood, innuendo, and/or ambiguity as to a material fact, in violation of K.S.A. § 50-626(b)(2);

10

b.  Willfully failing to state a material fact and/or willfully concealing, suppressing, and/or omitting a material fact, in violation of K.S.A. § 50-626(b)(3);

c.  Falsely stating, knowingly or with reason to know, that the consumer transaction involved consumer rights, remedies, and/or obligations, in violation of K.S.A. § 50-626(b)(8);

d.  Violations of K.S.A. § 50-626(a) which include, but are not limited to, the following:

   i.  Falsely representing, in November 2013, that Chris' alleged debt would be eradicated upon the completion of 115 weekly payments of $50;

   ii.  Falsely representing, in January or February 2016, that Chris' alleged debt would be eradicated in early February 2016 upon the completion of the Settlement repayment plan;

   iii.  Falsely representing, in July 2016, that Chris owed an additional approximately $1,100.00;

   iv.  Falsely representing, on October 2, 2016, that Chris owed an additional $1,103.15;

   v.  Garnishing Chris' bank account on October 11, 2016 in an amount greater than that authorized by the October 7, 2016 Order of Garnishment;

   vi.  Falsely representing, on November 16, 2016, the amount Chris owed on the alleged debt;

   vii.  Garnishing Chris' bank account(s) on November 29, 2016, in an amount greater than that authorized by the November 28, 2016 Order of Garnishment;

   viii.  Attempting to collect on a non-existent debt;

   ix.  Garnishing Holly's portion of the joint account for a debt which she never owed; and,

   x.  Engaging in a pattern of conduct that, when taken in its totality, was deceptive.

85.  Defendants' violations of K.S.A. § 50-627, Unconscionable Acts and Practices, include, but are not limited to, the following:

11

a. Taking advantage of the consumers' inability to protect their interests because of their ignorance of the law, in violation of K.S.A. § 50-627(b)(1);

b. Entering into a consumer transaction which was excessively onesided in favor of the supplier, in violation of K.S.A. § 50-627(b)(5);

c. Making a misleading statement of opinion on which the consumer was likely to rely to the consumer's detriment, in violation of K.S.A. § 50-627(b)(6);

d. Violations of K.S.A. § 50-627(a) which include, but are not limited to, the following:

    i. Falsely representing, in November 2013, that Chris' alleged debt would be eradicated upon the completion of 115 weekly payments of $50;

    ii. Falsely representing, in January or February 2016, that Chris' alleged debt would be eradicated in early February 2016 upon the completion of the Settlement repayment plan;

    iii. Falsely representing, in July 2016, that Chris owed an additional approximately $1,100.00;

    iv. Falsely representing, on October 2, 2016, that Chris owed an additional $1,103.15;

    v. Garnishing Chris' bank account on October 11, 2016 in an amount greater than that authorized by the October 7, 2016 Order of Garnishment;

    vi. Falsely representing, on November 16, 2016, the amount Chris owed on the alleged debt;

    vii. Garnishing Chris' bank account(s) on November 29, 2016, in an amount greater than that authorized by the November 28, 2016 Order of Garnishment;

    viii. Attempting to collect on a non-existent debt;

    ix. Garnishing Holly's portion of the joint account for a debt which she never owed; and,

    x. Engaging in a pattern of conduct that, when taken in its totality, was unconscionable.

86.    Plaintiffs are authorized to recover their actual damages and/or statutory damages in the amount of $10,000.00 per violation. K.S.A. §§ 50-634 and 50-636.

87. In this case, Plaintiffs' actual damages include, but are not limited to, their emotional distress.

88. Plaintiffs are further authorized to recover their reasonable attorneys' fees. K.S.A. § 50-634(e).

WHEREFORE, Plaintiffs pray for judgment against Defendants in such amount as is allowable by law and to be determined at trial, for their actual damages, statutory damages in the amount of $10,000.00 per violation, pre- and post-judgment interest at the greatest rate allowed by statute, for their reasonable attorneys' fees, and for such other and further relief as may be just and proper under the circumstances.

### COUNT THREE:
### OUTRAGE
All Plaintiffs
All Defendants

89. Plaintiffs incorporate by reference all facts and allegations contained in the foregoing paragraphs as though fully laid out herein.

90. Defendants' conduct was intentional and/or in reckless disregard of Plaintiffs.

91. Defendants' conduct was extreme and outrageous.

92. As a direct and proximate cause of Defendants' extreme and outrageous conduct, Plaintiffs have suffered mental and/or emotional distress.

93. Plaintiffs' mental and/or emotional distress is and/or was extreme and severe.

94. Defendants' conduct was intentional, willful, wanton, reckless, fraudulent, and/or with malice.

WHEREFORE, Plaintiffs pray for judgment against Defendants in such amount as is allowable by law and to be determined at trial, for their actual damages, pre- and post-judgment

interest at the greatest rate allowed by statute, and for such other and further relief as may be just and proper under the circumstances.

**COUNT FOUR:**
**CONVERSION OF $50.00**
All Plaintiffs
All Defendants

95.     Plaintiffs incorporate by reference all facts and allegations contained in the foregoing paragraphs as though fully laid out herein.

96.     At all relevant times, Plaintiffs were the legal and rightful owners of the subject $50.

97.     At no point did Plaintiffs authorize Defendants to assume or exercise the right of ownership over the $50.  Because Defendants did not have Plaintiffs' express or implied authorization to take and *retain* the $50, Defendants' conduct was unauthorized.

98.     On or about November 29, 2016, Defendants assumed and/or exercised the right of ownership over the $50 by withdrawing the same from their bank account(s).

99.     Because Defendants did not have Plaintiffs' express or implied consent to withdraw the money from Plaintiffs' bank accounts, Defendants' conduct was unauthorized.

100.    Defendants' assumption and/or exercise of the right of ownership over the $50 was to the exclusion of Plaintiffs' rights.

101.    As a direct and proximate result of Defendants' conduct, Plaintiffs have been damaged.  In this case, Plaintiffs' damages include, but are not limited to, their emotional distress.

102.    Defendants' conduct was intentional, willful, wanton, reckless, fraudulent, and/or with malice.

14

WHEREFORE, Plaintiffs pray for judgment against Defendants in such amount as is allowable by law and to be determined at trial, for their actual damages, pre- and post-judgment interest at the greatest rate allowed by statute, and for such other and further relief as may be just and proper under the circumstances.

### COUNT FIVE:
### CONVERSION OF $5,079.93
All Plaintiffs
All Defendants

103.    Plaintiffs incorporate by reference all facts and allegations contained in the foregoing paragraphs as though fully laid out herein.

104.    At all relevant times, Plaintiffs were the legal and rightful owners of the $5,129.93.

105.    At no point did Plaintiffs authorize Defendants to take possession of the $5,129.93. Because Defendants did not have Plaintiffs' express or implied authorization to take the $5,129.93 from their bank accounts, Defendants' conduct was unauthorized.

106.    On or about November 29, 2016, Defendants took possession of $5,129.93 by way of garnishing Plaintiffs' bank accounts.

107.    On or about December 1, 2016, Defendants returned $5,079.93 to Plaintiffs' bank accounts.

108.    As a direct and proximate result of Defendants' assumption of possession of the $5,079.93 from November 29, 2016 through December 1, 2016, Plaintiffs have sustained damages.

109.    In this case, Plaintiffs' damages include, but are not limited to, their emotional distress.

15

110.    Defendants' conduct was intentional, willful, wanton, reckless, fraudulent, and/or with malice.

WHEREFORE, Plaintiffs pray for judgment against Defendants in such amount as is allowable by law and to be determined at trial, for their actual damages, pre- and post-judgment interest at the greatest rate allowed by statute, and for such other and further relief as may be just and proper under the circumstances

### COUNT SIX:
### CONVERSION OF $1,263.47
All Plaintiffs
All Defendants

111.    Plaintiffs incorporate by reference all facts and allegations contained in the foregoing paragraphs as though fully laid out herein.

112.    At all relevant times, Plaintiffs were the legal and rightful owners of the $1,263.47.

113.    At no point did Plaintiffs authorize Defendants to take possession of the $1,263.47. Because Defendants did not have Plaintiffs' express or implied authorization to take the $1,263.47 from their bank account, Defendants' conduct was unauthorized.

114.    On or about November 11, 2016, Defendants took possession of $1,263.47 by way of garnishing Plaintiffs' bank account.

115.    As a direct and proximate result of Defendants' assumption of possession of the $1,263.47

116.    In this case, Plaintiffs' damages include, but are not limited to, their emotional distress.

117.    Defendants' conduct was intentional, willful, wanton, reckless, fraudulent, and/or with malice.

16

WHEREFORE, Plaintiffs pray for judgment against Defendants in such amount as is allowable by law and to be determined at trial, for their actual damages, pre- and post-judgment interest at the greatest rate allowed by statute, and for such other and further relief as may be just and proper under the circumstances.

**COUNT SEVEN:**
**INVASION OF PRIVACY/INTRUSION UPON SECLUSION**
Plaintiff Holly Sills Alone
All Defendants

118.    Plaintiff Holly Sills incorporates by reference all facts and allegations contained in the foregoing paragraphs as though fully laid out herein.

119.    Defendants intruded, physically or otherwise, upon Holly's solitude, seclusion, and/or private affairs or concerns.

120.    Defendants' intrusion into Holly's solitude, seclusion, and/or private affairs or concerns is and was highly offensive to Holly.

121.    A reasonable person would find Defendants' intrusion into Holly's solitude, seclusion, and/or private affairs to be highly offensive.

122.    As a direct and proximate result of Defendants' intrusion into Holly's solitude, seclusion, and/or private affairs, Holly has suffered damages which include, but are not limited to, emotional distress.

123.    Defendants' intrusion into Holly's solitude, seclusion, and/or private affairs was intentional, willful, wanton, reckless, fraudulent, and/or with malice.

WHEREFORE, Plaintiff Holly Sills prays for judgment against Defendants in such amount as is allowable by law and to be determined at trial, for her actual damages, pre- and post-judgment interest at the greatest rate allowed by statute, and for such other and further relief as may be just and proper under the circumstances.

17

**COUNT EIGHT:**
**VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT**
Plaintiff Holly Sills Alone
All Defendants

124.    Plaintiff incorporates by reference all facts and allegations contained in the foregoing paragraphs as though fully laid out herein.

125.    The Fair Debt Collection Practices Act ("FDCPA") is intended to "eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e).

126.    Plaintiff is a "consumer," as defined by 15 U.S.C. § 1692a(3).

127.    Each Defendant is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

128.    Defendants' violations of the FDCPA include, but are not limited to, the following:

      a.    Engaging in conduct of which has the natural consequence is to harass, oppress, or abuse in violation of 15 U.S.C. § 1692d;

      b.    Engaging in conduct which resulted in illegal garnishment and false representations concerning a debt in violation of 15 U.S.C. § 1692e, e(2), e(5) and e(10);

      a.    Attempting to collect on a debt not owed by Plaintiff Holly Sills, in violation of 15 U.S.C. § 1692f and f(1); and

      b.    Garnishing Plaintiff Holly Sills' bank account for a debt which she never owed, in violation of 15 U.S.C. § 1692f and f(1).

129.    Pursuant to 15 U.S.C. § 1692k(a)(1), Holly is entitled to the recovery of their actual damages, which, in this case, includes her emotional distress.

130.    Pursuant to 15 U.S.C. § 1692k(a)(2), Holly is entitled to the recovery of $1,000.00 in statutory damages.

131.    Pursuant to 15 U.S.C. § 1692k(a)(3), Holly is also entitled to the recovery of their reasonable attorneys' fees.

18

WHEREFORE, Plaintiff Holly Sills prays for judgment against Defendant(s) in such amount as is allowable by law and to be determined at trial, for their actual damages, statutory damages, pre- and post-judgment interest at the greatest rate allowed by statute, for her reasonable attorneys' fees, and for such other and further relief as may be just and proper under the circumstances.

### DEMAND FOR JURY TRIAL

COMES NOW, the Plaintiffs, and hereby demand a jury trial on all issues so triable pursuant to K.S.A. § 60-238.

Respectfully Submitted,

*/s/ Bryce B. Bell*
Bryce B. Bell          KS#20866
Bell Law, LLC
2600 Grand Blvd., Suite 580
Kansas City, Missouri 64108
T: 816-886-8206
F: 816-817-8500
Bryce@BellLawKC.com

*/s/ A. Scott Waddell*
A. Scott Waddell          KS#20955
Waddell Law Firm LLC
2600 Grand Blvd., Suite 580
Kansas City, Missouri 64108
T: 816-914-5365
F: 816-817-8500
scott@aswlawfirm.com
**Attorneys for Plaintiffs**

ELECTRONICALLY FILED
2016 Dec 27 AM 9:15
CLERK OF THE WYANDOTTE COUNTY DISTRICT COURT
CASE NUMBER: 2016-CV-000971

Christopher Barnes et. al.

vs.

Cavalry SPV I LLC et. al.

**SUMMONS**

To the above-named Defendant/Respondent:

> **Berman & Rabin, P.A.**
> **Serve Registered Agent:**
> **Daniel Scott Rabin**
> **15280 Metcalf Avenue**
> **Overland Park, KS  66223**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

> Bryce B Bell
> Bell Law, LLC
> 2600 Grand Blvd., Ste. 580
> Kansas City, MO 64108

within 21 days after service of summons on you.



Clerk of the District Court
Electronically signed  on 12/27/2016 10:34:44 AM

**Documents to be served with the Summons:**
PLE: Petition PLAINTIFFS' PETITION FOR DAMAGES